**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 19-1342

THOMAS SARKISOVICH DAVTIAN,
AKA Thomas Davtion, AKA Thomas Davitian,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Leo A. Finston
(No. A046-061-328)

Submitted Under Third Circuit L.A.R. 34.1(a)
March 10, 2020

Before: McKEE, AMBRO, and PHIPPS, <u>Circuit Judges</u>

(Opinion filed: May 26, 2020)

OPINION[*]

AMBRO, <u>Circuit Judge</u>

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Petitioner Thomas Davtian seeks our review of his final order of removal and the denial of his application for cancellation of removal, the latter of which an Immigration Judge ("IJ") granted and the Board of Immigration Appeals ("BIA") reversed on appeal. Davtian contends that the IJ and BIA erred when they denied his application for withholding of removal and relief under the Convention Against Torture ("CAT"). He also claims that the IJ and BIA failed to undertake the requisite analysis before categorizing his convictions as crimes involving moral turpitude. He did not raise these claims before the agency; therefore we do not have jurisdiction to review them. Nor do we have jurisdiction to review the weight the BIA gave certain evidence when evaluating Davtian's application for cancellation of removal. Finally, its slight mischaracterization of evidence did not constitute *de novo* fact-finding. Any misstatement by the BIA was ultimately harmless. Thus we dismiss Davtian's petition for review in part and deny it in part.

## I. Facts and Procedural History

### A. Background, Criminal History, and Convictions

Davtian came to the United States from the Soviet Union in 1996 at roughly the age of twelve. He lived here as a lawful permanent resident for twenty-three years when the Department of Homeland Security ("DHS") began removal proceedings against him. Davtian has a six-year old U.S.-citizen son, whom he has not seen for several years. He lives with and looks after his U.S-citizen mother, who has had a series of health problems in recent years.

Davtian has a significant criminal history. He was arrested sixteen times between 1998 and 2016, leading to at least four convictions. Several of his arrests involved domestic violence. His convictions for hindering apprehension and assault in the third degree were later characterized by DHS as crimes involving moral turpitude. Finally, in January 2016 he was convicted of unlawful possession of a firearm and sentenced to three years' imprisonment.

**B. Removal Proceedings before the IJ**

DHS began removal proceedings against Davtian in September 2016, alleging he was removable as a noncitizen convicted of unlawfully possessing a firearm in violation of 18 U.S.C. § 921(a) and as a noncitizen convicted of two moral turpitude offenses not stemming from a single scheme of misconduct. In 2017, DHS sent Davtian a Notice to Appear before detaining him in the Essex County, New Jersey jail. Seeking relief, he submitted applications for asylum, withholding of removal, protection under CAT, and cancellation of removal. The IJ granted his application for cancellation of removal after balancing the equities as required by *Matter of Marin*, 16 I&N Dec. 581, 584 (BIA 1978). On one hand, the IJ found that Davtian's lack of candor over his recent firearm conviction suggested he is not fully rehabilitated. On the other, Davtian's long-term residency in the United States, employment history, family ties to his mother, and the hardship he would suffer if removed to Ukraine, favored granting cancellation of removal.

During proceedings before the IJ, Davtian consented to the denial of his asylum application because he had not submitted any supporting documents other than his

3

biographic information. In the subsequent order from the bench, the IJ also denied his withholding-of-removal and CAT claims. Davtian did not object or appeal to the BIA the denial of these claims.

## C. The Board Reverses

DHS appealed to the BIA the IJ's cancellation of Davtian's removal. It reversed after considering, among other things, his significant and recent criminal history. Its decision emphasized Davtian's lack of candor over his firearm conviction, suggesting it "tends to minimize his culpability or responsibility for engaging in criminal or anti-social behavior." A.R. 4. He petitions us for review.

## II. Discussion

Davtian raises four claims before us. He argues that the IJ and BIA failed to provide the requisite moral-turpitude analysis, that the IJ and the BIA neglected to consider his withholding-of-removal and CAT claims, and that the latter erred by failing to consider all the relevant factors for cancellation of removal and by engaging in *de novo* fact-finding.

1. We do not have jurisdiction to review Davtian's claims unless he has exhausted all available administrative remedies.

"[A noncitizen] is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of the claim." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594–95 (3d Cir. 2003) (citing 8 U.S.C. § 1252(d)(i)). Exhaustion requires "some effort, however insufficient, to place the [agency] on notice of a straightforward issue being raised on appeal . . . ." *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005). Davtian made no effort before the BIA to

4

challenge the IJ's denial of his application for withholding of removal and CAT relief. In addition, he did not argue that the IJ failed to analyze whether he committed crimes of moral turpitude in his appeal to the BIA. Accordingly, we lack jurisdiction to consider these claims, and they are dismissed.

2. The BIA considered all relevant factors under *Matter of Marin*; we do not have jurisdiction to review the BIA's reweighing of these factors.

Davtian argues that the BIA did not consider all the social and humane factors relevant to his application for cancellation of removal as required by *Matter of Marin*. As he does not identify any specific factor unreviewed by the BIA, we interpret this claim to be an objection to the manner in which the BIA reweighed the evidence in his case.[1] The manner in which the BIA reweighs positive and negative factors "typically informs the exercise of its discretion under § 1229b(a)." *Cruz-Camey v. Gonzales*, 504 F.3d 28, 29 (1st Cir. 2007). Save for colorable constitutional claims or questions of law, we lack jurisdiction to review denials of discretionary relief in the form of cancellation of removal. *Pareja v. Att'y Gen.*, 615 F.3d 180, 186 (3d Cir. 2010) (citing 8 U.S.C. § 1252(a)(2)(B)(i); 1252(a)(2)(D)). Thus we also dismiss this claim.

3. Any error arising from the BIA's mischaracterization of facts ultimately was tangential to its decision and did not affect the outcome.

Finally, Davtian contends the BIA erred by engaging in its own factfinding when it reversed the IJ's cancellation of his removal. The BIA must "not engage in *de novo*

---

[1] In passing, Davtian also argues that the BIA misapplied the legal standard for cancellation of removal by requiring proof of unusual and outstanding equities. Although it quoted the standard for relief under repealed § 212(c) of the INA, it did not require that Davtian make a showing of unusual or outstanding equities, but instead noted that, "[a]s the negative factors grow more serious, it becomes incumbent upon the alien to introduce

5

review of findings of fact determined by an immigration judge[,]" but it is free to "review questions of law, discretion, and judgment." 8 C.F.R. § 1003.1(d)(3)(ii). The BIA mischaracterized in its opinion certain facts found by the IJ, but these errors did not affect its ultimate decision to reverse the IJ's cancellation of removal.

Davtian first argues that the BIA misconstrued the order of protection against him. It determined that the "order of protection against [Davtian], which prevents him from seeing his son," was a negative factor weighing against cancellation of removal. A.R. 4. This misstated the IJ's finding that the order of protection prevented Davtian "from having any contact with the mother of his child." *Id.* 106. But this mischaracterization of the record was ultimately harmless. The IJ and BIA mentioned the protective order to highlight Davtian's pattern of domestic abuse, not his relationship with his son.[2] As such, the BIA's error ultimately is "so tangential" to its reasoning "that there is no realistic possibility that the outcome would be different on remand." *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 402 (2d Cir. 2005); *see also Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011) (same).

Our analysis is similar regarding the BIA's mischaracterization of Davtian's rehabilitation. Davtian contends that the BIA also erred by describing his "lack of candor

---

additional offsetting favorable evidence[.]" A.R. 4 (quoting *Matter of C-V-T*, 22 I&N Dec. 7, 11-12 (BIA 1998). After weighing the factors, the BIA permissibly came to its conclusion that the positive factors did not prevail.

[2] The BIA's description of Davtian's protective order omits his efforts to build a positive relationship with his son. Yet we do not believe this prejudiced Davtian, as the BIA ultimately did consider his U.S. citizen son as a positive factor and the IJ did not mention the child in his balancing of the equities.

6

to the Immigration Judge as indicative of a lack of genuine desire or ability to rehabilitate himself," A.R. 4, when the IJ found that Davtian "testified in a sincere manner that he recognizes he has made mistakes in the past and is committed to not repeating them in the future." *Id.* 111. Nevertheless, the IJ doubted that Davtian was capable of rehabilitation despite his sincere testimony about his desire to do so; it noted that "rehabilitation is not really present" given his determinations that Davtian's testimony regarding his gun conviction was "non-sensical," "completely non-credible," and an attempt "to deflect culpability." *Id.* 110, 111. The BIA accurately described this finding while misstating the IJ's findings regarding Davtian's desire to change. Any error is once again "tangential" given the "overwhelming evidence supporting the administrative adjudicator's findings[, which] make[ ] clear that the same decision would have been reached in the absence of the error[ ]." *Lin*, 438 F.3d at 402.[3] We are persuaded that the BIA's decision to reverse the IJ's determination is supported by evidence of Davtian's lack of candor and significant criminal history. This claim thus fails.

\* \* \* \* \*

For these reasons, we dismiss Davtian's petition for review in part and deny it in part.

---

[3] In his Response in Opposition to the Government's Motion to Dismiss for Lack of Jurisdiction, Davtian alleges additional instances of the BIA engaging in fact-finding. Response in Opposition 11–13, *Davtian v. Barr*, No. 19-1342 (3d Cir. May 8, 2019). These allegations fail to raise a colorable legal claim, which is required for us to exercise jurisdiction. 8 U.S.C. §§ 1252(a)(2)(B)(i), 1252(d)(1). Further, as Davtian did not include these claims in his opening brief to us, he has waived them. *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017) ("As a general matter, an appellant waives an argument in support of reversal if it is not raised in the opening brief.").